UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 3:25-cr-778-CMC |
| v. | ) | |
| Robert John May, III, | ) | |
| Defendant | ) | |
| | ) | |

Relying on a self-serving interpretation of SA Lorenzen's affidavits and testimonies, the government's attempt to salvage her false and misleading affidavits falls well short. To search the government's position, which defies logic and strains commonsense, one must discredit SA Lorenzen's testimony despite her embracing it, discredit SA Lorenzen's observations about child pornographers despite her swearing to them, redefine the roles of modern technology, ignore offers of proof that show contradictions, and turn a blind eye to Forth Circuit case law.

## Agent Lorenzen's Testimony was Precise

It is indisputable that SA Lorenzen confirmed it to be very, very common for the electronic devices and cloud accounts of suspected child pornographers to not contain CSAM or CSAM artifacts.

> Q. And so as for as execution of search warrants, either through a cloud service or through a direct device, it is your testimony that it is very, very common to -- have an execution of a search warrant in a federal case and there be no CSAM material or artifacts in any of that, either on the devices or in a cloud storage?
>
> A. Of federal and State, yes.

See Detention Hearing Transcript, p 63, lines 21-25; page 64, lines 1-3

To the extent the government claims this exchange to be imprecise, it is worth noting the structure of the question and the scope of SA Lorenzen's response. The question informs SA Lorenzen of the topic twice ("so as far

as execution of search warrants" and " to -- have an execution on a search warrant"). The question also informs SA Lorenzen the subject of the topic, twice ('either through a cloud service or through a direct device" and "either on the device or in a cloud storage?"). To suggest the question lacked precision is laughable. The question clearly puts forth, twice, that the Defense was inquiring about search warrants and puts forth, twice, that the question sought information on the relationship between search warrants and the discovery of CSAM or CSAM artifacts.

Also of importance is SA Lorenzen finding it appropriate to answer without hesitation — suggesting she understood the question — and her choice to expand her answer beyond the original scope of the inquiry into Federal case. That is to say, SA Lorenzen was so confident in her answer — that CSAM or CSAM artifacts would very, very commonly not be located on a suspect's devices or cloud storage accounts — she applied it to State cases as well. Such forceful answer is hardly the hallmark of imprecision or confusion between the questioner and the answerer.

Additionally, implication of imprecision is

inconsistant with SA Lorenzen's training experiance, and September 17 claim that her testimony was "true."

Over a 25 year career, SA Lorenzen has been trained to observe carefull and report accuratley in the feild, and listen carefully and answer accuratly in the courtroom. The record reflects this to be the case here. SA Lorenzen was asked a question. She listened to the question. She understood the question. She answered the question.

Furthermore, in a September 17 meeting between the parties, SA Lorenzen stated — refering to her affidavit and her testimony — that "two things can be true at the same time." This is, of course, a far cry from the governments position today in which they seek to downplay and disccredit SA Lorenzen's testimony as insignifigant and imprecise. As much as the government would like to distance themselves from SA Lorenzen's testimony — (1) that child pornographers commonly delete apps and files of CSAM; (2) that Kik is not the cloud; (3) that the devices of suspected child pornographers very very commonly do not contain CSAM or artifacts; and (4) that the cloud accounts of suspected child pornographers

will very, very commonly not contain CSAM or CSAM artifacts — they cannot do so by begging the court to accept a "because we said so" explination.

Special Agent Lorenzen's testimony was not imprecise. It was, according to her, truthful.

## Kik is Neither the "Cloud" nor a Third Party Image Storage Site

Kik, as the government correctly describes in its response filing, "is a chat application that allows users to communicate and share videos, and photographs both in group and person-to-person setting with other Kik users." See Governments Response, ENTRY # 74, page 2, footnote 1. For all intents are purposes, Kik is an alternative texting platform. Kik is not a "third party image Storage site" nor is it a "Cloud" based dipository in any sense of the words, but particularly not in the context of paragraph 9E. Reading this Section as a whole, SA Lorenzen is exclusively describing how "individuals who collect" CSAM retain, protect, and save such materials. 9E does not describe the sharing habits of child pornographers. So when SA Lorenzen copy and pasted that Collectors of CSAM may "send it to third party image Storage Sites" she was avering that collectors of CSAM may perform a one-way transfer of images to a site (not an app) to store and retain CSAM.

In addition to the government proffering that Kik is a "chat application" as opposed to a cloud storage system, SA Lorenzen also recognized Kik as only "essentially" like a cloud storage system, not an actual cloud storage system. SA Lorenzen further clarified that she was refering to things like Google Drive and Dropbox as "the cloud," not Kik.

Q. Yeah but what you are refering to is say Google Drive, Dropbox, that is generally refered to ?.

A. Correct

Q. As, quote, unquote, the cloud ?

Kik is not a cloud storage system. It is a chat application. This is a fact the government cannot circumvent.

The Government Fails to ADDRESS All of SA Lorenzen's Omissions

The government devotes a significant portion of their response to wrongly re-classifying Kik as a cloud storage dispository. In reality, it does not matter if Kik is a chat application or cloud storage application if the CSAM, the account, and the application used to view it are deleted after access.

> Q. Is it also common for collectors of child pornography to delete apps or delete files after they have gratified themselves sexually with the pornography they collected?

> A. Yes

See Grand Jury Testimony of SA Lorenzen, page 22, lines 10-14.

> Q. And in your training and experiance do users of mobile apps like this sometimes delete their accounts after they have gratified themselves with

the child pornography?

A. Yes.

See Detention Hearing, page 57, lines 10-14.
For this, the government has no answer.
Paragraph 9E makes no mention of
child pornographers commonly deleting CSAM,
apps, or accounts.

The government's assertion that "the
agent repeatedly pointed defense counsel back
to Kik... as a place where... child pornographers...
store and maintain child pornography" is
negated by the same agent's testimony
that child pornography viewed via an
app is commonly deleted along with the
account and application. Commonsense says it
would be impossible to — as the government suggests —
"retain access to child pornography by leaving
it on apps like Kik" when CSAM files,
accounts, and apps like Kik are commonly
deleted after access.

## Paragraph 9E Does NOT Describe SA Lorenzen's Training and Experience

The government consistently refers to paragraph 9E as describing SA Lorenzen's training and experience in investigating CSAM. Paragraph 9E may describe someone's training and experience, but it does not describe hers.

The text of paragraph 9E is, again, boilerplate designed to meet all of law enforcements needs in establishing probable cause. Its author and origin are unknown but a word-for-word copy has been used in search warrant applications since at least 2011. See US v. Richardson. SDFL.

To suggest paragraph 9E is SA Lorenzen's description of her experience in investigating child pornographers' is untrue, especially when testimony directly from SA Lorenzen describing her actual experience is available and contradicts the copy and pasted experiences of an unknown person. Knowing paragraph 9E was not drafted to reflect SA Lorenzen's knowledge, training, and experience,

and that its sole purpose is to "establish [a suspect's] computer would contain child pornography (or, at least, its remnants) some months later" underscores its falsity. Had paragraph 9E reflected SA Lorrenz's experience, it would have reflected her testimony. It would have included (1) that those who view child pornography commonly delete the CSAM they view and the accounts and apps used to access it; (2) that suspected child pornographers' electronic devices very, very commonly do not contain CSAM or CSAM artifacts, and (3) that suspected child pornographers' cloud accounts very, very commonly do not contain CSAM or CSAM artifacts.

Of course, including this information — even without deleting the conflicting boilerplate — would defeat probable cause for two seasons. First, an issuing magistrate would inevitably demand a further fruitful investigation into the inquiry at hand and the contradictions within the affidavit. In such cases, the warrant will be invalid and the resulting search unlawful. See US v. Davis, 714 F.2d 900. (9th Cir. 1983). Second, the affidavit would no longer convey to the magistrate judge the critical information needed

to defeat staleness. Instead, the affidavit would convey that the person behind Kik was unlikely to collect CSAM (ie child pornographers commonly delete CSAM files, accounts, and apps after access, and a suspected child pornographer's devices and cloud accounts very, very commonly do not contain CSAM). And that it would be very, very common to not locate any CSAM artifacts on the suspect's devices or cloud accounts. See US v. Sanders, 107 F. 4th 252 (4th Cir. 2024). Under these conditions, where the suspect is unlikely to collect CSAM and CSAM artifacts are unlikely to be located, the underlying information is stale.

## SA Lorenzen Mislead The Court

Probable cause under the Fourth Amendment must be demonstrated by a truthful showing. This does not mean "truthful" in the sense that every fact recited in the warrant is necessarily correct but it must be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true. See U.S v. Tate.

The requirement that affiants make truthful showings means affidavits must set forth sufficient facts so that a magistrate can make an independent evaluation of probable cause. It also means agents may not tell different stories to different judges nor conveniently orchastrate their affidavits and testimonies to tip the scales of justice in violation of the Fourth Amendment.

As the record shows, SA Lorenzen did just that by engaging in a pattern of deceptive behavior designed to mislead the Court. Specifically, SA Lorenzen description and knowledge of child pornographers was dependent on the issuance of a search

warrant.

While attempting to secure a search
warrant, SA Lorenzen relied exclusively on
boilerplate language designed to meet all of
law enforcements needs. That often copy
and pasted, but never updated, regurgitation
of some unknown individual's traing and
experiance describes child pornographer collectors
as "rarely, if ever, dispos[ing] of their sexually
illicit materials" and retaining computer
images of CSAM indefinitly. SAL made no
mention of child pornographers commonly deleting
CSAM nor did she inform the issuing magistrate
of it being very, very common to execute a
search warrant on a suspected child pornographer
and discover no child pornography on any
devices or cloud accounts. This selective
description of child pornographers is found
in both SA Lorenzen's search warrant for
the May residence and Target Phone #1.

Convieniently, SA Lorenzen's description
of child pornographer habits morphs into
something unrecognizable from her probable
cause affidavit upon the issuance of
a search warrant. In SA Lorenzen's two
testimonies after securing a warrant, child
pornographers no longer "rarely, if ever, dispose"

of their CSAM, but instead, commonly delete CSAM files, accounts, and apps used to access it. Child pornographers no longer retain images of CSAM, but instead, very, very commonly retain no images or artifacts of child pornography on their devices or cloud accounts.

SA Lorenzen had a duty to provide the magistrate judge with sufficient facts so she could make an independent evaluation of probable cause. That included informing the magistrate that based on her experience, search warrants executed on child pornography suspects very, very commonly do not locate CSAM or CSAM artifacts and that child pornographers commonly delete files, accounts, and apps after accessing CSAM.

Because SA Lorenzen omitted these facts with at least reckless disregard for the truth, she deprived the magistrate of her independent role of evaluating probable cause.

## A Collector Must Collect

The government's claim that an issuing magistrate could infer the target individual was a person who collects child pornography without paragraph 9E is inconsistent with existing Fourth Circuit precedent. As the Fourth Circuit concluded in its Richardson decision, a four month delay did not render the warrant stale when the affiant included in her probable cause affidavit that child pornographers "rarely, if ever, dispose of their sexually illicit materials" because the statement allowed the magistrate to infer the suspect would retain images of CSAM for an extended period of time. Without such a statement, no inferance can be made.

Furthermore, the collector inferance is only relevant if there is probable cause to believe that [a given suspect] is such a collector. See US v. Raymonda. Here, the government's arguments about whether the defendant falls into a certain class misfocus the inquiry which is whether there is reasonable cause to believe images of CSAM will be in the identified residence. See US v. Hay. SA Lorenzen's testimony

prevents such a finding as her omissions clearly point toward any suspect not maintaining a collection of CSAM. Specifically, a corrected affidavit would convey to the issuing magistrate that:

- Child pornographers will commonly delete CSAM files, accounts, and apps used to view such material after access.
- Suspected child pornographers' devices will very, very commonly not contain any CSAM or CSAM artifacts
- Suspected child pornographers' cloud accounts will very, very commonly not contain any CSAM or CSAM artifacts

No issuing magistrate would infer a suspect is likely to collect images of CSAM when the affiant avers the above.

## CONCLUSION

Child pornography search warrants often depend on inferences made by judicial officers based on the information supplied by the affiant. However, there are limits on what can be drawn from the information provided.

Where an agent's sworn testimony does not support an inference that a suspect is likely to collect and hoard images of CSAM but instead likely to delete any files, accounts, or applications after access, probable cause to invade a home and seize property does not exist after months between the alleged access and the issuance of a warrant.

The warrant here was issued on an affidavit that contained a number of material misstatements and omissions. SA Lorenzen's original affidavit made the following representations:

- Individuals who collect child pornography rarely, if ever, dispose of their illicit materials
- That there is a know desire of such individuals to retain CSAM

- That such individuals will retain computer images of child pornography indefinitly

In essence, the affidavit attempted to paint the Defendant as a collector of CSAM who would hoard such images and never dispose of them. It also suggested that the images of CSAM were likely on his devices even though months had passed since the alleged access.

In reality, SA Lorenzen's experiences and knowledge about the tendincies of CSAM suspects was very different than what she presented to the magistrate. In subsequent testimony, Agent Lorenzen swore the following:

- Child pornographers commonly delete CSAM, accounts, and apps used to view CSAM after access
- Suspected child pornographers' devices very, very commonly do not contain CSAM or CSAM artifacts
- Suspected child pornographers' cloud accounts very, very commonly do not contain CSAM or CSAM artifacts

SA Lorenzen acted with at least reckless disregard for the truth when she provided false information to the magistrate — while omitting her true believes — intended to mislead her into thinking CSAM would be found at the target location. She recklessly relied on boilerplate facts about someone elses experiences and training — while supressing her own — to give a misleading impression the Defendant was a hoarder of CSAM who was still, despite the passage of time, likely to have the illicit materials on his devices.

These reckless falsities and omissions were not simple negligence. Rather, SA Lorenzen engaged in a pattern of deception that turned on whether a search warrant had been issued. For the reasons set forth, the August 5, 2024 search on the Defendent's home, and any seizures as a result, must be invalidated.

Respectfully Submitted